Warren, Your Honor. It's Kirk Kennedy for the Appellant from Las Vegas. In this case, Mr. Santos was successful in getting a favorable letter from the EEOC supporting a finding of a prima facie case of discrimination for national origin and race. We then filed suit. The district court on summary judgment also agreed that a prima facie case had been shown, but it found that the county had articulated legitimate nondiscriminatory reasons which we could not overcome. That is, I think, the crux of this appeal for consideration by this tribunal is whether or not sufficient evidence existed to show that the county's refusal and failure to hire Mr. Santos, a Filipino American, was merely pretext. And the evidence I have of that, that my case has, essentially is that Mr. Santos met all of the minimum criteria for the position. There were three requirements for the position. You had to have a B.A. or B.S. degree in engineering or architecture, industrial, commercial, and planned residential experience, as well as an ICBO, International Conference of Building Inspectors certificate. Now, Mr. Santos had all three of those. Mr. Hines, a Caucasian male, did not. The Roger Condie, who was the manager of the department, he, along with And at the district court on summary judgment, the county's position was that, well, I think they'd have to acknowledge that Mr. Santos met all the criteria, as well as the fact that Mr. Hines did not, but that at the interview process, Mr. Hines scored higher. And that was the justification and the apparent legitimate reason for hiring Mr. Hines over Mr. Santos, who scored seventh out of eight in the interview. Well, let's assume that you're correct as to some of what you say. What is the evidence that there was discrimination and failure to promote on account of age? On account of age, I On account of age. On account of age, I would abandon that. I believe I did abandon that at the district court. You're abandoning that. I'm sorry. There's not sufficient evidence of age. And if I didn't make that clear in the brief, forgive me. I just tried to focus on race and national origin. That's the only reason we're here on that. And not a hostile work environment? The hostile work environment, I would admit, candidly, it's somewhat of a stretch because we don't have we have a number of incidents throughout 01 into 02 and even up to the present, he's still employed with the county, where he was treated differently, principally by his supervisor, Kevin McOsker. The question is, is it sufficiently pervasive and severe enough over time? And looking at this, I mean, I would candidly admit, I mean, it's borderline on my best day. There are a number Now, at least you're being candid. Okay, I appreciate that. Can we go back to race? So you've laid out his qualifications and how Mr. Hines came in. The statement we have here, which is a little unusual, because you don't often see in discrimination cases these days things quite as direct, or at least testimony that it occurred, and that was to the effect, I'm going to put the Asians in the rancho office because I don't want to see their ugly faces. Are there additional statements like that that in your view tip it back to your burden and out of the pretext arena? I know where you're going. And, you know, it is rare in a race-based case that you actually have such a direct comment like that. It's kind of the exception rather than the rule. We don't have that. Discovery did not show any other statements by Mr. Conde or Kevin Hines that were doing this action. We do have a statement which I --from Mr. McCosker that he didn't want to have Mr. He wasn't the type of person they were looking for for an earlier application in 01, and then later in 01 he applies for this position, Mr. Santos does. So there may be some animosity. Yes, sir. Can I call attention to that statement? Yes, please. Because it seems to me it's too critical, or at least to me. This came in in the deposition of your client. It was an add-on. He answered one question, they were not in my client's check division, yes, but they were all the same division, and let me add to that, while I'm here, if you're going to make the premise, in his conversation with Michelle Morgan, told her, Michelle Morgan was the secretary-type, told her that I'm going to take her deposition. So what we have is a hearsay statement that Michelle Morgan told your client that Mr. Conde had some adverse feelings. Was there a declaration or was there an affidavit from Michelle Morgan? No, no. We did not in discovery take her deposition. Of course, that probably would have solved that hearsay issue, which is ever apparent on this evidence, and that was- What we have on our record is a hearsay statement that would not be a reasonable trial. Unless one were to construe it as a statement against interest by a party opponent. You don't have a statement to your client. You've got a statement to a person who told your client. You've got a double hearsay jump. And I call it any hearsay rule that would let you have that. Now, we've made it quite clear in the Blore case that in summary, the judge should only consider admissible evidence. I don't, and I want to ask you about this because to me, this is the most important piece of evidence in your entire case to get past some of the judges. But I don't see how on the Board that we can even consider that statement because of the double hearsay part. Can you respond to that for me? There's no doubt and no question that it is indeed hearsay. I took Mr. Conde's deposition, nor would I expect him to make such a statement in a deposition. Perhaps if we had taken Ms. Morgan's deposition, it would have come out directly from her testimony in this case. So we don't have that. So we have an apparent double hearsay problem. I would not challenge that. I put it in there for completeness of the record so at least the Court is free to, and it sounds like, may disregard it. So that leaves me with what I originally argued, that Mr. Santos was indeed one of the most qualified candidates for the job and that the selection of Mr. Hines, even though there are eight candidates, the selection of a lesser qualified Caucasian male is determinative. If the district court can't consider that particular piece of evidence on assembly judgment, so the smoking gun is gone. So then you have to rely upon the other evidence you have to get past the assembly judgment. Well, let me give a different approach, if I may. Yes, sir. Our court has held that admission by an agent within the scope of his employment is admissible, and is not and would be admissible on assembly judgment. It's the Goodwin case. It says, well, such statements may be deemed hearsay, but an admission by an agent within the scope of his employment is admissible. Do you have any comment about that case? I've got both sides of the bench. I like what you have to say for sure. And basically, perhaps there's some sort of balance that has to be achieved with that. You're right. It's double hearsay. It's glaring. It's ever-apparent. Isn't the Goodwin case? The problem isn't the statement. Yeah. It's the double hearsay to get to it. For example, in the Goodwin case, if they had made that statement to him and then he testified to it, that's that case. But then if he made the statement to the coworker and then the coworker tells the plaintiff, then you're in Judge Wallace's case, right? Which is where we're at. Which is where we're at. There we have it. So I have to. So I guess the question then, if you have to – if that statement were to fall out, what would we look to to say that, from a factual standpoint, that they hadn't really met their pretext burden on the part of the employer? I would just have to come back, then, to how things played out factually with the hiring of Mr. Hines, someone who didn't have the qualifications, someone who Roger Condi admitted when he did the interview process, he didn't even know what Article 17 was about. He admitted that. He didn't know that every applicant in Clark County in Las Vegas has to meet the minimum criteria before you even get to the interview. He made it all the way to the interview and gets the job. But that's more of in the nature of a prima facie case, isn't it? In other words, maybe he's – your client scored 7 of 8. Yes. That's right. So there were other people that scored higher, correct? That's true. That's true. And I believe there – And there's no suggestion that – I mean, I guess I'm having trouble with where does the race or national origin find its way back into the case. Maybe you could help me with that. The make-up – the composition, of course, is in the appellee's brief. There are some breakdowns of the composition of the building department. The building department is not devoid of Asians. There are Asian engineers and workers there. So clearly they do have Asian employees. The question I would look at is whether is there sufficient indirect evidence to show that the failure to promote Mr. Santos was something that was based at least in part on his race. The EEOC letter at least found by proponents of the evidence said it was. Of course, that's only one piece of evidence that could come out at trial if it were to go to trial. But I would have to look at the course of events and as well as how he was being treated by Mr. McOsker, who did make a statement, not race-based, but one could imply that if you're not the kind of person we're looking for, made to him earlier in 2001, and Mr. McOsker indeed was on the interview panel, he was one of the three, that perhaps that was one of the factors that would come into play when you consider is there enough evidence here under Goodwin to go to trial and have we presented sufficient – I don't think we have that direct evidence. You know, if I had the statement from Condi directly, I got it. I got him good. And maybe we're not even here if I had that directly, and I don't. But what I have is how he was treated through the whole interview process. He did win his arbitration. He challenged that with the county, and that's in the briefs, and went forward from there. I have a few minutes left, but I wanted to touch on a couple of things real quick. The emotional distress claim, the state law claim that we submitted, I just wanted to note that this is a case where we had evidence that was submitted that Mr. Santos did suffer from physical manifestation of symptoms. He did seek psychological treatment and care for anxiety and depression disorders that he had from two doctors in Las Vegas. The question is, as always with these claims, is it extremely outrageous enough to equal this type of tort? I would submit that when a government employer like Clark County, which employs hundreds of employees in Clark County, and has actually great policies. Clark County, I've litigated several cases against Clark County. Many of them end up here. We see Clark County a lot. My name's on many of those cases. Clark County has great policies. They have great policies in place. If the county followed those policies, plaintiff's lawyers like me wouldn't be here. We wouldn't be filing these cases. So they've got great policies that, if followed, are meaningful. But here we have a situation where if a government employer doesn't follow its own policies, I would submit to you that that is extreme and outrageous, especially from a government employer, no less. The private sector, crazy things happen. But from a government employer, you almost have to demand, demand that they will follow the letter of the law, including Title VII and everything that that means. So if you do find something on the state law claims, we would submit that there's sufficient evidence for the emotional distress claim to go forward. The negligence supervision claim, I don't believe I addressed it in my brief. It's addressed on the appellee's brief. And I believe it was a misread by the district court below. The negligence supervision claim wasn't filed to try and get punitive damages, which aren't even permissible. The negligence supervision talks about the fact that you have managers like Condi and Kevin McOsker, who are supervisory and manager-level employees of the county, who apparently are not following the county's own policies against discrimination in the workplace. And I forgot what the rule is on citing cases and argument, but there's a FEDSUP case, Canada v. Boyd Group. It's from Nevada, 809 FEDSUP 771. It's a 1992 case from, I believe, the district court in Las Vegas. And it acknowledged that an employer has a right, I'm sorry, an obligation to properly train and supervise its employees, so they do follow those regulations and rules, in this case, Federal law as well as the county's regulations. And I would submit that there was sufficient evidence to support allowing that negligence supervision claim to go forward. Lastly, on the retaliation claim, there's no doubt, I think, the district court agreed that Mr. Santos did engage in a protected activity when he challenged his grievance to challenge the denial of the job with the county, and also when he filed his complaint with the EEOC, and later with this lawsuit. So I think that's covered. The question is what type of adverse conduct did he endure? I laid out in the brief in the statement of facts the different things that occurred with Mr. McOsker and how that's the same argument that was making on a hostile work environment claim, but I'm talking about how he was treated differently, unfavorable assignments, not given certain assignments, treated differently than other employees. I believe that would constitute. The reading I've had from Yartsov and Wray and a number of Ninth Circuit cases, it seems as though in Brooks v. San Mateo that the Ninth Circuit does give a broad interpretation of what is an adverse employment. It doesn't have to be just termination, that's it. I mean, there seems to be a very broad category of what constitutes an adverse employment action. And I would submit that what Mr. Santos endured for several years with the county would amount to, and especially these key years of 01, 02, 03, amounted to an adverse employment action. And there's definitely a causal link. The causal link, not only closeness of time, but the relation of events between the filing of the complaint, his challenge with the union, his arbitration process that he won, and then this litigation. So I would submit that the district court erred in denying the retaliation. I'd better. I've been going on here. I've got 40 seconds. Thank you. Gloria Sturman, counsel for Clark County in this litigation. We submit that the district court properly dismissed all of Plaintiff's claims because he presents at best and only a prima facie case. He is over the age of 60 and he is Asian. However, everything about his work environment and the way he was treated at work showed that he was not discriminated against. In fact, this was a very diverse work environment that he was in. He was treated fairly at all times within this work environment. Treated no differently than anybody else. With respect to his promotion claim, it is significant, and it's Exhibit 9 to the appellate's excerpts, that one of the criteria that the county adopted for this particular job was that experience as a plans examiner could be substituted for education on a year-for-year basis. The individual who scored third highest out of all the applicants was the person who ultimately got the job. And the reason he got the job was he'd had 18 years of commercial experience. And if you're at all familiar with Las Vegas, you know that it is a place that has boomed in recent years, particularly in the area of commercial building. The individual who received this promotion was someone who had spent years working on high-rise hotels. And the ultimate determination was made that as he had the most experience in that category and the third highest scores in the actual oral interview, that he was the person who should receive that job. The thing that he did not have, the one thing that he lacked and the thing that the grievance turned on was the fact that he did not have this ICBO certificate. That's a he had a different kind of certificate than was needed because he was working as a building inspector as opposed to a plans examiner. Mr. Rabat-Santos was already working in plans examination. He already had that certificate, having obtained it after he was hired. The county had in place an informal process by which if you needed a certain type of certificate, they wouldn't require you to have it before they hired you. They would give you an opportunity to obtain it once you had a job with them. This was the same thing that they had in place and they were going to allow Mr. Hines to do. On arbitration, at the grievance hearing, the arbitrator found that inappropriate. That was never anywhere in writing, but the plain letter of the contract between the county and its employees stated that if you have a requirement, you're supposed to have it at the time you're hired. And so for that reason, it was determined that Mr. Rabat-Santos should receive this job. And he, in fact, obtained not only the position, but all back pay. And this is significant to a couple of issues in this case, one of which Mr. Kennedy just referenced, and that is on these State court tort claims. The reason that's important is the Court found that as he had been given a hold through that grievance process, that the negligence claims would have no remedy under those claim that is reinstatement and back pay. And he'd been in the job for several years now at this point in time. With respect to other issues on, in fact, the Court, I would have to agree with the Court's interpretation that the only evidence there is of any kind of race-based animus is the statement that a co-worker supposedly told Mr. Rabat-Santos that Mr. That's absolute hearsay. And, in fact, when questioned about why Mr. Rabat-Santos and others were sent to work at Rancho, at his deposition, Mr. Condi testified, We were moving people out to the new location on Russell Road. We needed a they weren't going to have a supervisor with them. We needed people who were self-starters and self-motivated. So we tried a number of people in that location. At one point in time, Mr. Rabat-Santos was sent to Rancho to see if he would be somebody who would work in this self-starting, non-supervised environment when they ultimately were moved out onto Russell Road. And what is your interpretation of the Godwin case? Specifically, as mentioned, Mr. Rabat-Santos never questioned Mr. Condi about this. He never talked to Mr. Condi about this. Mr. Condi never made this statement to him. This was a statement supposedly made to a third party. It was one statement. There is no evidence that this was any kind of a series of statements made to various people, that more than one person heard this statement, that more than one person made this kind of statement about persons of Asian descent. It was an isolated one-off. And because of that, and taken in its isolation, and having been made not to Mr. Rabat-Santos where he could use it as an admission against Mr. Condi, it was made to a third party in the form of an affidavit or a deposition testimony saying, yes, I remember Mr. Condi saying that to me. I believe it's just simply not the basis for which this Court or the trial court below could properly make a finding. And further, one statement in itself, and in isolation, I would submit, is not the kind of evidence that the Court in its more recent decisions since the Desert Palace case has held show direct, this kind of direct or circumstantial evidence that's required. It really requires more of a pervasive showing, more than one time, and this is consistent with many of the decisions of this Court on any kind of race-based animus, that it has to pervade the workplace if it's going to be circumstantial. You need a little bit more evidence than one person, one time, making a one-hand, offhanded statement. The — I believe it's the Stegall case stands for that proposition, that you need a little bit more evidence, even if it's purely circumstantial, than merely a one-time statement. And in that case they abolished any real difference between circumstantial and direct evidence after the Supreme Court in the Desert Palace case, which also came out of Nevada. So — But again, it's admissible evidence, and that's the thing that we don't have here. We don't have admissible evidence of that kind. If it were admissible, wouldn't it be more akin to the case where the person made the comment about two chinks, even though it was not an extensive comment and didn't go on on numerous occasions? It's getting a little closer there. I think there's also a case out of Oregon involving an Asian woman who worked in a bank. I forget her name now. Manat? I think it was Manat. And — but again, there was a case where that court said this was regrettable, that they would make this kind of a statement, that they would harass this woman. I think she mispronounced a word, Lima, Peru or something. And they would make fun of her in this fashion, but it doesn't show that this is the kind of thing that really over — was anything more than a one-time event, and that when called on and told to stop behaving in this fashion, her fellow employees did. And in this particular case, there's no evidence that Mr. Abad-Santos ever complained about this. He never followed up on this alleged discriminatory conduct made by Mr. Condi. He never complained about it. It was never investigated. It was simply something that a co-worker supposedly told him in the workplace. But again, it was never followed up on by Mr. Abad-Santos or by anyone else, never reported, never investigated. And when questioned about it at his deposition, Mr. Condi simply said, I had a reason for putting people in that department in that location because I was — I needed them to be people who could work without supervision. That was the only explanation that was given, and there is no other admissible evidence to show to the contrary or anything to show that there was any kind of race-based animus directed at anyone who was of any other race. Similarly, there's nothing to show from this evidence, as the district court observed, that persons who were not Asian or of other ethnicities were treated better than Mr. Abad-Santos. There's simply no evidence to show that either the frequency or the amount of write-ups or anything else that Mr. Abad-Santos received were directed at him because of his race, whereas people who were not of an Asian background or any other racial background than white were treated better than he was. In fact, one of Mr. — there's a series of things that Mr. Abad-Santos complained about that Mr. McOsker did. One of the things was when Mr. Abad-Santos received his architectural license, it was not promoted to the entire department, and yet these two other individuals received their building certificates, and they were promoted to the entire department as being — having received these. And Mr. McOsker said, you know, those other two people, one of them was African-American and the other person was Asian. I mean, it's not that they were white people treated better. They were also of a different race, but they received building certificates. The architectural certificate, while nice for Mr. Abad-Santos, didn't really pertain to his position in the building department. Similarly, he felt that he was discriminated against because they wouldn't pay for his architecture license. That's not a requirement for him holding this job. What's a requirement for him holding this job is his international conference of building official certificate, which is technically a lesser degree, but it's what's significant to the building department because that's their job. So in everything that Mr. Abad-Santos complained about, while the Court observed realistically and to him subjectively, he did feel he was being treated badly. That's not the standard. It has to be both subjective and objective. And there was no objective evidence that he was treated in a hostile fashion, that he was treated differently than white people in his department or that white people were treated better than he. So for that reason, the Court appropriately dismissed the claims of hostile work environment because there's just this lack of the – I think the term that the Court has used is an unrelenting barrage of adverse treatment. There's a few isolated instances that to Mr. Abad-Santos in his subjective feelings hurt him, but which failed to rise to the level of the kind of frequency and intensity that this Court has found are necessary to find a hostile work environment was in existence. Mr. Abad-Santos raised a number of 1983 claims, which I'd like to address briefly. Because the Title VII claims fail, the 1983 claims for employment practices discrimination must also fail. But he also alleged a couple of other claims, violation of his free speech and right to privacy. There's simply no evidence in the record on that, and the Court appropriately threw those out because they simply – there's – the record was entirely devoid of any evidence about those two issues. And finally, with respect to these State law claims, the Court appropriately exercised jurisdiction over these claims as they arise out of the same operative facts, and it was appropriate for the Court to consider these State law claims through supplemental jurisdiction. The – as I mentioned earlier, the negligence and negligent supervision claims were really, by this point, immaterial because there was nothing further that Mr. Abad-Santos could seek through those State law claims alone to have any damages or relief from the district court. So the Court appropriately threw those out. Punitive damages are not recoverable under Nevada law by a government – against the district court, but the only thing was his emotional distress claim. And again, as the Court had observed, subjectively, Mr. Abad-Santos felt that he was not treated fairly. However, the – there's a plethora of case law in Nevada on emotional distress in the business and work environment, and these types of claims require a fairly high standard that the conduct is – is extremely outrageous, and I know that Mr. Abad-Santos and the committee argued very passionately that the – you should expect the government to comply with its procedures. But this is the same procedure, this requiring an international conference of building officials certificate that Mr. Abad-Santos himself benefited from when he first went to work for the county. It was an informal process. It's been held inappropriate, and the county no longer follows it. But everyone had benefited from it up to that date, and so it's not the kind of a procedure that it was used to discriminate against people. It was, in fact, giving people a chance to get a job with the county and then get any kind of certificate or requirement that they might have to have later. So this is not the kind of thing that rises to the level of extremely outrageous and abusive conduct needed to cause a person emotional distress. Intentional and reckless conduct, again, the Court found the record was just devoid of anything done intentionally to harm Mr. Abad-Santos here. They were simply trying to find the person who they felt was most appropriately qualified to handle the kind of complicated commercial design projects in the Las Vegas area. And finally, the Court found that Mr. Abad-Santos' few visits to a physician did not show the kind of extreme emotional distress necessary. He did not have the kind of physical manifestation of symptoms that is required in Nevada law for an emotional distress claim. So the Court, having evaluated all of the evidence before it, and they had everything in our motion for summary judgment. They had every record. They had every deposition transcript. And Judge Clive Jones appropriately reviewed every bit of evidence and concluded that the record was devoid of evidence to find any causes of action for a plaintiff beyond his prima facie case, that, in fact, he failed on all causes of action, and that all of his causes of action should be dismissed, and they were appropriately dismissed. We would submit that this Court should sustain that finding with the trial court, unless there are any other questions. If there's not, thank you. Mr. Kennedy, you have just under a minute, if you have some comments to add. All I'd like to say is that it's important to consider that the damage claims Mr. Santos did win his arbitration. The arbitrator only had authority to award the back pay and benefits associated with the position. He did not address at all any issues of discrimination, things of that type. So there was some debate in the district court about that, and I just want to make sure for this record that, you know, we're seeking here the damages beyond the economic component. The only thing he has left would essentially be his non-economic damages associated under Title VII that he would be entitled to beyond the back pay. I mean, obviously, that issue had been resolved. So we would ask the Court to reverse the district court as to the Title VII disparate treatment claim and the state law claims. Thank you. I thank both counsel for your arguments this morning. Abad Santos versus Clark County is submitted, and we're adjourned.
judges: Wallace, D.W. Nelson, McKeown